ALUMINUM COMPANY OF NORTH AMERICA *v.* RAMSEY.

Opinion delivered March 1, 1909.

1.  INSTRUCTIONS—REFUSAL TO DIRECT VERDICT—TEST.—In determining whether, in a personal injury suit, the trial court properly refused to direct a verdict for the defendant upon the ground that plaintiff's negligence contributed to his injuries, the test is whether reasonable and fair-minded men, from all the facts and circumstances adduced in evidence, could have come to a different conclusion as to plaintiff's negligence. (Page 534.)

2.  MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE FOR JURY WHEN.— Where plaintiff, a servant, was injured while in the performance of his duties when he would not have been hurt if a fellow servant had been attending to his duties, the question whether he was negligent in not keeping a lookout to see whether the fellow servant was attending to his duties was properly left to the jury. (Page 534.)

3.  SAME—VALIDITY OF FELLOW SERVANTS ACT.—The fellow servants' act of March 8, 1907, abolishing the common-law rule that a servant assumes the risk of negligence of his fellow servant, is valid in so far as it applies to the employment of servants by corporations. *Ozan Lumber Co.* v. *Biddie,* 87 Ark. 587, followed. (Page 535.)

4.  SAME—CONTRIBUTORY NEGLIGENCE—INSTRUCTION.—An instruction to the effect that if plaintiff, a servant, was injured while in the exercise of ordinary care, either by the negligence of the master or of another servant, he was entitled to recover is not objectionable as telling the jury that the plaintiff had an absolute right to assume that his fellow servants would perform their duties, regardless of whether he was in the exercise of due care himself. (Page 535.)

5.  INSTRUCTIONS—GENERAL OBJECTION.—A general objection is insufficient to point out an ambiguity in an instruction. (Page 537.)

6.  INSTRUCTIONS—PROVINCE OF JURY.—It is improper to instruct the jury that a certain fact or group of facts amounts to negligence *per se,* unless such acts are declared by law to be negligence *per se,* or are such as to induce an inference of negligence in all reasonable minds. (Page 538.)

7.  SAME—REPETITION.—A refusal to give an instruction that is substantially covered by another instruction given is not prejudicial. (Page 539.)

8.  SAME—PROVINCE OF JURY.—It is not prejudicial for a trial judge to refuse an instruction which tends to take from the jury a disputed

question of fact, and thus to mislead them as to the issues submitted to them for their decision. (Page 540.)

9. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.—Contributory negligence is a matter of defense, the burden of proving which is on the defendant. (Page 540.)

10. DAMAGES—EXCESSIVENESS—REMITTITUR—The testimony shows that plaintiff was 22 years old at the time of his injuries; that his left leg was injured, and had to be amputated about 5½ inches below the hip; that he suffered great pain, and lay in the hospital for ten weeks; that he would probably suffer pain during the rest of his life; that his medical bill and hospital fees were $386.22; that he was a man of average intelligence, and was earning $2.40 per day when hurt. *Held,* that a verdict for $20,000 was excessive, but would be affirmed if reduced to $12,000. (Page 541.)

Appeal from Saline Circuit Court; *W. H. Evans,* Judge; affirmed on remittitur.

### STATEMENT BY THE COURT.

George M. Ramsey brought this action against the Aluminum Company of North America to recover damages for physical injuries alleged to have been received by him, while in the employment of said company, an account of the negligence of one of his fellow servants.

The defendant company answered, setting up contributory negligence on the part of the plaintiff as a defense to the action.

The Aluminum Company of North America is engaged in the mining of bauxite in Saline County, Arkansas, and in connection with its plant operates a narrow-guage railroad with a trackage of two miles, which is used for the purpose of hauling the ore from the mines to the drying shed. The equipment of the road consisted of one locomotive and about 80 tram cars. The roadbed was new, and the track in good shape at the time the accident in question happened. At the time of the trial in September, 1907, George M. Ramsey, the plaintiff, was nearly 23 years old. He commenced working for the company on the 31st day of August, 1906. He commenced to run the engine on the 22d of January, 1907, and continued to run it up to the time he was injured, which occurred on the 18th day of June, 1907. The shed runs north and south. One track runs east and one northeast. The cars from the northeast track were placed in the shed by kicking them there. From the east track they were run in by

means of a "flying switch." There was no "Y" or turntable. When the cars came from the Martin mine, they were run in the shed by means of the flying ·switch, and were unloaded there. The customary manner in making the flying switch is described as follows: The locomotive was in front of the cars, coming from the mines, and when it arrived at a big cut about 200 yards from the switch, the engineer would blow the whistle. In response to this signal, two employees of the company would come out of the car sheds, go down along the track and jump on the moving cars to assist in bringing them in. One of them would jump on the engine to pull the pin for the flying switch when the engineer gave the signal. The switch was always left open, so that the engine could take the right-hand track, which led around to the end of the shed. After the engine passed the switch, the switch would ·be thrown so that the cars would take the left-hand track, which led into the shed to the ore bins. When in about 50 yards of the switch, the engineer ·would check the speed of the engine, and this would cause the coupling between the engine and the car next to it to slacken so that the pin could be pulled. The engineer would then increase the speed of the engine, so that it could pass the switch and get on the right-hand track ahead of the cars. When the engine reached the switch, the man on the engine with the engineer would jump off the engine and throw the switch in order to place the cars on the left-hand track leading to the sheds. The switchman would then jump on the moving cars to assist the brakeman in setting the brakes, so as to stop them at the ore bins. The engine was a small one, and had no tender. · The train crew consisted of the engineer and a brakeman. Sometimes the brakeman pulled the pin to make the flying switch, but he usually rode on the rear end of the train of cars, so that if the train broke he would ·be in a better position to control the cars which had broken loose from the engine.

The accident happened on the second trip that had been made on the morning of its occurrence. The brakeman was riding on the rear end of the train, and the signal for the switchman to come to throw the switch was blown in the cut as usual. When the engine arrived at a point about 50 yards from the switch, the engineer pulled the pin to uncouple the cars from the locomotive. When the plaintiff got back on his feet after

pulling the pin, and looked ahead, McLaughlin was walking up the track toward the engine about ten steps away, and Page was standing at the switch with his foot on the sill. McLaughlin and Page had come out of the shed for the purpose of throwing the switch and assisting the brakeman in stopping the cars at the ore bins in the shed. It was the duty of Page to throw the switch. The engine was about 40 yards ahead of the cars when it passed the switch. As it passed McLaughlin and Page, plaintiff said: "You come out here next time and pull this pin. We are in a hurry this morning. I don't want to pull the pin another time. I pulled it last time." They said: "All right." Plaintiff rolled the engine down to the road crossing and stepped off right behind it when it stopped. He grabbed the clinker hook and turned around. The cars were then within ten steps of the switch. Page was standing at the switch, but plaintiff did not notice whether the switch had been thrown or not. He was in a hurry, and had stepped down to attend to the fire in his engine. Just as he raised up, the cars ran into him, knocked him down and up against the engine. The cars were moving at the speed of 7 or 8 miles per hour. When the cars hit him, McLaughlin was four car lengths from the first car and Page was behind him at the switch. Plaintiff was both engineer and fireman. It was necessary for him to rake the fire and get out the clinkers to get up steam enough to move the engine back up the grade. He said that he could not do this work in any other position than that assumed by him at the time of the injury; that the work could not be done from the boiler because the platform from behind the end of it was only two feet wide, and the fire would burn him if he stood so close; and that, besides this, in standing on the platform he could not get the clinker hook down in the fire. That he could not do this work from either side of the engine because there was no opening into the fire box on either side, and that in consequence thereof he had to stand right in front of the door and in the middle of the track to do the work. The plaintiff gave the signal for the men to come out to throw the switch when he was about 200 yards from it, and it was his duty to direct when the flying switch was to be made. When he gave the signal, it was the duty of one of the men to pull the pin, and after the engine had passed the switch it was the duty of

the other to throw the switch. Plaintiff relied upon Page to throw the switch. Plaintiff's leg was crushed so badly it had to be amputated.

The above is the substance of the testimony of the plaintiff detailing the circumstances relating to the injury.

On cross examination he stated that sometimes in making a flying switch you split the switch. That sometimes it happens that a piece of coal or wood will get into the switch and prevent its being thrown. That if he had looked a few seconds longer he could have seen whether the cars took the left-hand track, but that he could almost have the engine hot in that time, and that he was in a hurry.

On redirect examination he testified that the track on which he was injured was so curved that he could not tell, from where he was, whether the switch was open or shut. That the switch bar was small and flat on one side or the other as the switch is open or shut. That at the time of the injury he was absorbed in getting the engine ready to go back to the mine. That if there was a piece of coal in the switch the man at the switch could have told it better than he, and that if the switch failed to work he could have notified him of the fact by holloing to him, as he was only 5 or 6 car lengths away.

R. L. Page for the defendant testified:

"I am 23 years old, and reside at Bauxite, Arkansas, and work for the defendant. I have been at work for that company about one year. I was working for it when Ramsey was hurt. We always made a drop of the cars, or flying switch, when bringing ore from the Martin mine. The engine would pull the cars down, and then we would meet them. One of us was supposed to get on the cars and cut the engine off and ride the engine to the switch, the engine taking the right-hand track, drop off and turn the switch for the main line so that the cars would run on into the shed. Always two of us went out to meet the train. When it whistled on this occasion, Sam McLaughlin and I went out. I ran past the the switch stand, and as the engine ran past me Ramsey said, "Bob, I want you to be here next time to pull this pin." I said: "All right, Houston, I will." That was about twenty yards from the switch stand. I ran east and caught the cars, getting on the fourth car, and McLaughlin

caught on about four cars back of me. I was about twenty yards from the switch when the engine passed me, and proceeded to run east until I climbed on the cars. I was on the left-hand side of the track, the side the switch is on. I did not stop after leaving the switch. Mr. Pipkin, the shed foreman, sent us out, and we ran until we met the train. McLaughlin and I did not stop and sit on the coal box. There was no one at the switch to throw the switch after the engine passed. I could not have run ahead of the cars to throw the switch and the cars ran into siding. McLaughlin was on the opposite side of the track. Forrest Raper, the brakeman, was on the last car. I have never known of Ramsey pulling the pin himself on any other run. Before that it had been the custom for the engineer to stop and wait for us if we did not come out in time to pull the pin and throw the switch. The engine ran about twenty steps beyond the switch before it stopped, stopping on the road crossing.. The engine when it passed me was running too fast for me to get on without running a risk of getting hurt."

Other evidence was adduced tending to corroborate the testimony of Page.

There was a jury trial and the verdict for the plaintiff in the sum of $20,320. The defendant has duly prosecuted an appeal to this court.

Appellee asked the court to instruct the jury as follows:

"1. You are instructed that while an employee assumes all the risks and hazards usually incident to. the employment he undertakes, he does not assume the risk of the negligence of the company for whom he was working or any of its servants. In other words, he has a right to assume not only that the master will perform its duty, but he has a right to assume that each of the other servants will perform their duty, and if, while in the exercise of ordinary care, he is injured, either by the negligence of the master for whom he works or by the negligence of any other servant of the master, he has a right to recover; and if you find from the evidence in this case that the plaintiff, Ramsey, while in the exercise of ordinary care, relied upon the other servants performing their duties, and was injured by the negligence of some other servant, your verdict must be for the plaintiff.

"2. You are instructed that negligence is the doing some-

thing that a man of ordinary prudence would not do under the circumstances, or the failure to do something which a man of ordinary prudence under the circumstances would do; and if you find from the evidence in this case that Ramsey was doing what a man of ordinary prudence would have done under the circumstances, he is not guilty of contributory negligence, and your verdict must be for the plaintiff.

"3. You are instructed that contributory negligence cannot be presumed, but must be proved, and the burden of proving it is on the defendant.

"4. If you find for the plaintiff, in assessing his damages you may take into consideration his pain and suffering, both mental and physical, caused by the injury, if any is proved, his probable future suffering as a result of the injury, if any future suffering appears from the evidence to probably result from the injury, and his expenses for medical attendance caused by the injury, if any are proved.

"5. If you find that the plaintiff, while in the exercise of ordinary care upon his part, was injured by reason of the carelessness or omission of duty of the defendant, its servants or employees, you will find for the plaintiff."

These instructions were given over the objections of appellant.

At the request of appellant, the court gave the following instructions:

"2. You are instructed that the mere fact that plaintiff was injured while in defendant's employ, or was injured about the works of defendant, creates no liability upon defendant to pay for any damages he may have suffered; nor is there any presumption that because of such injury defendant or any of its agents or servants was negligent and is responsible therefore, but the burden of proof is on the plaintiff to establish by a preponderance of the evidence that his injury and damage were caused by the negligence of defendant.

"3. You are instructed that contributory negligence is the failure to use that degree of ordinary care and caution to avert injury to himself which would be used by an ordinary prudent person under the circumstances; and if you find from the evidence that plaintiff failed in any respect to use that degree of care

and caution which an ordinary prudent person would use under the circumstances, and that his failure to use such care contributed to cause his injury, so that, but for his concurring negligence, the injury would not have happened, your verdict will be for the defendant; and by ordinary care is meant the exercise of reasonable diligence and implies such watchfulness, caution and foresight as under all circumstances of the particular service would be exercised by ordinary careful and prudent persons.

"5. Even though defendant's agents or employees may have been guilty of negligence which caused plaintiff's injury, still if plaintiff was guilty of any carelessness or negligence which contributed in any degree to cause his injury, so that, but for his concurring negligence, the accident would not have happened, your verdict will be for the defendant.

"6. You are instructed that the operation of trains and working on and about tram-road tracks are necessarily dangerous; and a person working about moving trains and about tracks where trains are being moved is bound to use care and watchfulness commensurate with his dangerous surroundings to avoid injury to himself.

"11. If you find from the evidence that, immediately preceding the time of the occurrence of the accident complained of in this suit, plaintiff was in charge of defendant's engine and a string of tram cars, and that, as he approached the switch leading to the shed of defendant's mill, it was his custom to blow his engine whistle, and thereupon switchmen were sent from defendant's mill to meet the engine and train for the purpose of switching the cars into the mill and of controlling their speed with brakes, and that it was the custom for one of these switchmen to get upon the engine and pull the coupling pin connecting the engine with the first car, and thereupon the engine would increase its speed and run ahead of the cars which were coming behind it, the switchman who pulled the coupling pin remained on the engine and getting off at the switch for the purpose of turning it so the cars could take the siding; and if you find from the evidence that at the time this injury occurred the switchman did not reach his engine in time to make the switch as described, and thereupon he uncoupled the engine from the train of tramcars himself and increased the speed of his engine and ran ahead of the cars,

and did not use care to ascertain whether the switchman whose duty it was to turn the switch was at the switch, but proceeded and after passing the switch got on the track behind his engine, and that if he had looked when passing the switch he would have seen that no one was there to turn it, you are instructed that his injury is due to his own fault and neglect, and your verdict will be for the defendant.

"12  You are instructed that there is no evidence in this case that the engine, cars, brakes, switch, or track of the defendant company was out of repair; and there is no evidence in this case of any negligence on the part of defendant, or its agents or employees in this respect.

"16.  If you find from the evidence that it was not plaintiff's duty to uncouple the engine from the cars, and that his doing so made the drop switch more dangerous, and contributed in any degree to cause his injury, so that but for his contributory negligence the accident would not have happened, then his act was contributory negligence, and your verdict will be for the defendant.

"17.  If you find from the evidence that it was plaintiff's custom and duty, when making trips from the Martin mine, to stop his train and wait until the switchmen came from the mill to assist in switching the cars, and that he failed to stop his train and wait for the switchmen to come from the mill to assist in switching the cars, and that he failed to stop his train and wait for the switchmen to arrive at the train to assist in making the switch that was attempted before his injury, and that his conduct in this respect contributed in any degree to cause his injury, so that, without his concurring negligence, the accident would not have happened, your verdict will be for the defendant.

"37.  The testimony of Bullock of any statement made by Page that Page was at fault for the accident, or was at the switch in time to turn it, is not admissible as tending to prove that Page was at the switch in time to have turned it and have prevented the accident, but is only admissible as it may affect the credibility of Page."

These instructions were given by the court. Other instructions were asked by appellant, which were refused. As they will be sufficiently set out in the opinion, it will not be necessary to do so here.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. The making of flying switches is dangerous work, and in making them an extra degree of care is required. Labatt on Master and Servant, § 338. Appellee was not inexperienced, but, on the contrary, acquainted with the work and its dangerous nature. His being in a hurry was no excuse for neglect on his part to exercise the degree of care for his own safety the nature of the work demanded. By his own testimony he was negligent, first, in getting on the track at all after making the flying switch, until his senses apprised him that the cars had taken the other track; second, in failing to know the man under his direction would do the work as he desired it done, and, third, in getting on the track after making the flying switch under any circumstances to do something that was unnecessary to be done at the particular moment. 61 Ark. 549; 56 Ark. 273; 66 Ark. 237; 76 Ark. 13; 49 N. W. 848; 37 N. Y. Supp. 144; 159 Mass. 536; 69 Ia. 154; 96 Cal. 269; 90 Va. 405; 83 Va. 512; 102 Ia. 507; 98 Ia. 544; 40 N. E. 439; 103 Ala. 142; 139 Ind. 682; 181 Mass. 197; 111 Fed. 769; 106 Ia. 253. Appellee controlled the movements of the train and how the work should be done at the time. He ought not to recover for an injury resulting from his own want of care. Labatt on Master & Servant, § 333; 128 Mass. 1; 89 Ala. 24; 64 Ill. App. 359; 45 Ark. 325; 53 Fed. 61; 86 Ark. 65.

2. The failure of plaintiff to keep a lookout on the moving cars charged him with negligence *per se.* Acts 1901, p. 213; 85 Ark. 237; 78 Ark. 22; 80 Ark. 528; 83 Ark. 61; Labatt on Master & Servant, § 362; 39 W. Va. 46.

3. That appellee unnecessarily exposed himself to the danger that resulted in his injury was one theory of appellant's defense. Hence it was error to refuse specific instructions on this point. 50 Ark. 545; 69 Ark. 134; 80 Ark. 345; 87 Ark. 531; 9 N. M. 49; 180 N. Y. 682.

4. It is patent that appellee would have been freer from danger on his engine than he would with part of his body on the ground, and it is elementary that if there is a safe way and a dangerous way to do the work, and an employee adopts the dangerous way, he is guilty of negligence. Thompson on Neg. § 5372; 93 Ga. 570; 56 Fed. 973; 108 Fed. 747; 103 Ga. 820; 112

Ga. 914; 24 Fed. 908; 12 Ill. App. 372; 6 Tex. Civ. App. 650; 78 Ill. App. 278; 106 Ia. 253; 179 U. S. 698.

5. There was evidence tending to show that on previous occasions when appellee was in charge of the train the cars had followed the engine in making a flying switch, and had not taken the switch, and the jury should have been instructed that if appellee knew this he should have exercised greater care in these contingencies. 98 Mich. 343; 159 Mass. 532; *Id.* 536; 170 Mass. 164; 114 Ala. 131; 52 N. Y. Supp. 30.

6. If it was appellee's duty to instruct the employee under him what to do under the circumstances, and he failed to do so, and such failure to instruct contributed to cause the injury, then the appellee was guilty of negligence contributing to his injury. 22 Ky. Law Rep. 1400; 85 Ill. 481; 97 Ga. 777; 129 Ala. 553.

7. The verdict is excessive. 76 Ark. 184; 57 Ark. 377; 48 S. W. 222; 99 S. W. 74; 24 N. Y. Supp. 490; 10 N. Y. App. Div. 463; 29 N. Y. Supp. 816; 87 N. W. 505; 66 S. W. 246; 31 So. 994; 32 So. 535; 70 Ark. 331; 80 S. W. 768; 182 Mo. 687; 103 N. W. 42; 189 Mo. 408; 84 Pac. 1127.

8. The language of the act (Acts 1907, p. 163) gives a right of action only in instances where the agents, servants or employees are in the exercise of due care. Before a party can recover under the act, he must show that he is within its terms, and the burden is on him to show that he was in the exercise of due care. 78 Ia. 509; 55 Ia. 326; 154 Mass. 31; 58 S. C. 413; 59 Ga. 436; 51 N. W. 125.

The act is unconstitutional in that it discriminates in favor of partnerships and individuals as against corporations, and the court's former holding, 87 Ark. 587, that the act was intended as an amendment to the charter of incorporation is not evidenced by its title or language. 204 U. S. 103.

*Mehaffy, Williams & Armistead,* for appellee.

1. Cases cited by appellant in support of its contention that plaintiff was guilty of contributory negligence as a matter of law, that he had no right to rely upon another servant doing that which he was there to do, and that he was guilty of contributory negligence in cleaning the engine from the ground, are either not in point, or based upon facts that make them inapplicable to this

case; others support appellee's contention.  159 Mass. 532; Labatt, Master & Servant § 356, p. 925.  See 58 Ia. 150; 64 Ia. 603.

2.  The constitutionality of the act abolishing the fellow servant defense has been settled in this State.  *Ozan Lumber Co. v. Biddie,* 87 Ark. 587.  Such legislation is also sustained by the United States Supreme Court.  127 U. S. 205; 127 U. S. 211; 157 U. S. 210; 175 U. S. 350; 199 U. S. 590.

3.  It was not negligence as a matter of law for appellee to get down off his engine to fix the fire.  To so hold would be to make the servant an insurer of his own safety.  87 Ark. 443.

4.  The fifteenth instruction requested by appellant is not applicable to the facts of this case.  Appellee was not going on the track where other cars were likely to be moved, but where, if other employees performed their duty, they would not come.  84 Ark. 377.

5.  Instructions were properly refused which assumed that appellee had exclusive charge of the train and cars, engine and track and control over the men working with him.  These other parties had been sent to perform, and had performed, the duties of handling the switch and operating the cars into the mill before, and the assumption that appellee should have told them to throw the switch or should have left his engine and directed the throwing of the switch in person is not sustained by either the law or the facts.  Labatt, Master & Servant, § 888.  Appellee and these other employees were fellow servants.  77 Ark. 290; Thompson on Neg. § 5050; 14 Am. & Eng. Ry. Cas. (N. S.) 625; 81 Ind. 226; 26 Ill. App. 99; 35 La. Ann. 1166; 123 Mo. 121; 33 Fed. 801.  See also 14 Am. & Eng. R. Cas. (N. S.) 575; 82 Ark. 334; 51 Ark. 467; 46 Ark. 555; 42 Ark. 417; 67 Ark. 377.

6.  The "lookout statute" (Kirby's Dig. § 6607) applies to Raper, McLaughlin and Page, who were in charge of the running cars, and it was their duty to keep a lookout for persons on the track and stop the cars or give warning of their approach to appellee who was not a trespasser but rightfully upon the track in appellant's service.  77 Ark. 1; 80 Ark. 528; 81 Ark. 275.

7.  The burden of proving contributory negligence was on appellant, notwithstanding the qualifying phrase in the Fellow Servant Act, "being in the exercise of due care."  48 Ark. 333; 58 Ark. 125; 72 Ark. 572; Labatt, Master & Servant, 2329, note

b; 51 N. W. 125; 54 Ga. 509; 40 Fla. 17; 58 Ga. 485; 95 Ga: 685; 85 Wis. 610; 120 Wis. 412.

8. The verdict is not excessive. 14 N. Y. Supp. 336; 46 Minn. 439; 65 N. Y. Supp. 1064; 84 S. W. 375; 33 Ill. App. 450; 50 S. W. 624.

Hart, J., (after stating the facts.) 1. It is earnestly insisted by counsel for appellant that the first instruction asked by him, which was peremptory, should have been given. On this view of the case we must consider the testimony in its most favorable aspect to the appellee, for it is the province of the jury to pass upon the weight of the evidence. With that we have no concern, however greatly we may think it preponderates one way or the other. The test is, could reasonable and fair-minded men from all the facts and circumstances adduced in evidence have come to different conclusions as to whether or not negligence on the part of appellee might be inferred? If so, the right to draw the inference is for the jury. On the other hand, if reasonable minds could have reached but one conclusion from the evidence, then the question of contributory negligence is one of law for the court.

Appellee, when he was injured, was not a trespasser upon the track. His work required him to be there. He testified that the engine was so constructed that it was necessary for him to stand in the middle of the track to rake out the clinkers. His work required haste, for the rapidity with which he hauled the cars to and from the mines necessarily facilitated the operation of the mines. It is true that if he had waited a few seconds he could have seen that the switch was not thrown. But he said that the switchman was standing there with his foot on the sill of the switch stand, and that it was his duty to throw the switch. He further stated that, at the time of the injury, he was only five or six car lengths away from the switch stand, and could have heard a warning cried by the switchman if the switch had failed to operate. Under these circumstances, we do not think he was necessarily negligent because he did not wait to see if the switch was thrown and the cars took the left-hand track before he commenced to fix his fire.

As was said in the case of *Rahman* v. *Minn. & N. W. Rd.*, 43 Minn. 42, "the law imposed upon him the exercise of ordinary

care and prudence, and in considering what this is, under a given state of facts, regard must be had for the danger to be apprehended, the reasonable probability of incurring it, as well as the natural presumption that other persons will discharge their duty and act with due care.". See also *Henry* v. *Sioux City, etc., Ry. Co.,* 9 Am. St. Rep. 457. This is not a case where the physical facts were such that reasonable minds must come to the conclusion that appellee heedlessly took a position of danger. Certainly, he would have been in no danger if the switchman had thrown the switch as his duty required him to do, or, even if it failed to operate, had the switchman called out to him that fact, he could have escaped injury. Hence we think from all the facts and circumstances of the case as they appear from the record that the question of contributory negligence was one for the jury, and that the court was right in not directing a verdict for the appellant.

2. Instructions numbered 26 to 36, inclusive, pass out of the case.

The act of our Legislature approved March 8, 1907, which abolishes in this State the common-law rule that a servant assumes the risk of negligence of his fellow servant, has been sustained by the court in the case of *Ozan Lumber Co.* v. *Biddie,* 87 Ark. 587, decided since the trial of this case in the court below. Hence it is not necessary to notice the refusal to give these instructions which were asked by the appellant, and which were based upon the unconstitutionality of that act, except to say that the opinion in the case of the *Ozan Lumber Co.* v. *Biddie* is in accord with the modern text writers on the subject and as well the great majority of adjudicated cases.

3. The first assignment of error is based upon the action of the court in giving instruction No. 1 at the request of appellee. The instruction is set out in the statement of the case. It is claimed that the language of the instruction was susceptible of the construction that appellee had an absolute right to assume that his fellow servants would do their duty, and that it was therefore misleading and prejudicial.

It may be well here to notice the principles of law upon which this instruction is based. The common-law doctrine was that a servant assumed the negligence of his fellow servants. In discussing the question of contributory negligence under such conditions, Mr. Elliott says:

"An employee may, within limits, act upon the assumption that the employer's duty to exercise ordinary care has been performed, but the fact that the employee may act upon such assumption does not relieve him from the duty of exercising ordinary care to avoid the injury. The presumption that the duties of the employer to the employee have been performed does not authorize the employee to carelessly or heedlessly venture into danger, nor does it relieve him from the duty of taking knowledge of and guarding against dangers plainly and fully open to observation." 3 Elliott on Railroads, p. 768.

Again, the right of the servant to rely on the care of the master is thus stated: "Unless the danger is actually known to the servant, or is so obvious and imminent that an ordinarily prudent person would refuse to incur it, he had the right to rely upon the performance by the master or his authorized agents, other than his own fellow servants, of the duties imposed upon the master by law for the protection of his servants." 26 Cyc. 1233.

The act of March 8, 1907, of the General Assembly of the State of Arkansas, (Acts of 1907, p. 162) abrogated the common-law rule that a servant assumes the risk of negligence of his fellow servant. It is very broad in its terms, and in effect provides that in cases of corporations the master shall be liable to the servant for injuries or death caused by the negligence of any other servant of the master in the same manner and to the same extent as if the negligence causing the injury or death was that of the employer. The rule as to the right of a servant to rely on the exercise of due care by his fellow servants under statutes similar to our fellow servant statute is aptly stated as follows:

"While, under statutes limiting the fellow servant doctrine, a servant has a right to rely upon the exercise of reasonable care by his fellow servants, this does not absolve him from caring for his own safety, as an ordinary prudent man would do under like circumstances, and he cannot recover for an injury received by reason of the negligence of a fellow servant, if he knew, or, by the exercise of ordinary care, might have known thereof." 26 Cyc. 1236 and cases cited. An examination of the cases cited in the text shows that they support the rule as stated. Tested by these principles, we think the instruction was correct.

We do not think it is open to the construction that it told the jury that the appellee had an absolute right to assume that his fellow servant would perform his duty, regardless of the fact of whether appellee was himself under all the circumstances of the case in the exercise of ordinary care and prudence. We think the effect of the instruction was to tell the jury that the law imposed upon appellee the exercise of ordinary care and prudence, and in determining that question that the jury might consider the fact that he relied upon his fellow servant performing his duty, at the same time having due regard himself for the danger to be apprehended and the reasonable probability of incurring it.

We do not wish to be understood as approving the instruction in the form in which it was given; but, if the language was thought to be ambiguous or of doubtful meaning, counsel for appellant should have specifically called the court's attention to that fact and asked that the instruction be amended, instead of making a general objection to it. *St. Louis, I. M. & S. Ry. Co.* v. *Hoshall,* 82 Ark. 391, and many cases cited; *St. Louis I. M. & S. Ry. Co.* v. *Hardie,* 87 Ark. 475. A general objection is insufficient to point out an ambiguity in an instruction. *Burnett* v. *State,* 80 Ark. 225, and cases cited.

4. Counsel for appellant insists that the court erred in not giving instructions Nos. 8 and 13. As these instructions are open to the same objection, they may be considered together. They read as follows:

"8. If you find from the evidence that the fire in the engine which plaintiff was operating could have been attended to by plaintiff by remaining on the engine, but that, instead of remaining on the engine to attend to the fire, he got off the engine and stood behind it upon the track, and thereby was injured, you are instructed that plaintiff placed himself in a dangerous position needlessly, and was guilty of contributory negligence, and your verdict will be for defendant.

"13. If you find from the evidence that, in order to make the flying switch, such as was customary at defendant's plant and as described in evidence, the time in which the person throwing the switch had to perform this duty was short, and the person throwing the switch had to act with promptness in order to have the switch thrown in time for the cars to take the track to the shed,

and that the plaintiff knew of this fact, but, notwitstanding such knowledge, he assumed that the switch would be turned in time for the cars to take the other track, and did not look or make other reasonable effort to ascertain that the switch had not been turned, but got upon the track in front of the moving cars, and was injured, you are instructed that he had no right to place himself in that position of danger in absolute reliance upon the switch being turned in time to divert the cars, although when he passed the switch with his engine he may have seen some person at the switch who apparently expected to turn it; and if he acted in this manner he was guilty of contributory negligence, and your verdict will be for the defendant."

It will be noted that the instructions single out certain facts, and tell the jury that if they find these facts to exist appellee was guilty of contributory negligence. The effect of the instructions was to tell the jury if they found the facts stated in them to exist that appellee as a matter of law was guilty of contributory negligence.

"The existence of negligence should be passed upon by the jury as any other fact, and it is improper to instruct them that a certain fact or group of facts amounts to negligence *per se*, unless such acts are declared by law to be negligence *per se,* or are such as to induce an inference of negligence in all reasonable minds." 29 Cyc. 645 and cases cited; *Pauckner* v. *Wakem* (Ill.), 14 L. R. A. (N. S.) 1118; *Louisiana & T. Lumber Co.* v. *Brown,* 109 S. W. (Tex.) 950.

The instructions as written are peremptory in their nature and took away from the jury the question of contributory negligence. Consequently, they invaded the province of the jury, which is never permissible. *Rector* v. *Robins,* 82 Ark. 424; *Stephens* v. *Oppenheimer,* 45 Ark. 492; *Reed* v. *State,* 54 Ark. 621; *Blankenship* v. *State,* 55 Ark. 244.

5. Instructions Nos. 7, 9, 10, 14, 22, asked by appellant and refused by the court, are open to precisely the same objection as are instructions Nos. 8 and 13 already discussed. What has been said in condemnation of them applies with equal force to the ones here under consideration. No useful purpose can be served by setting them out in the opinion, and we need only say that the court was right in refusing them, for the reasons already given.

6. Counsel for appellant insists that the court erred in not giving instruction No. 15 asked by them. It reads as follows:

"15. You are instructed that the tracks on which cars are moving are dangerous, and that it is the duty of persons having occasion to go upon tracks to make use of their senses to ascertain that no moving trains are near which may do them harm; and it was the duty of plaintiff before getting upon the track to use such care as a prudent person under the circumstances would use to ascertain if any moving cars were on the track on which he was standing that might possibly cause his injury; and if you find that he failed to keep such a lookout as a prudent person under the circumstances would keep on moving cars, and that by reason of such failure he was injured, your verdict will be for the defendant, even though you may find that some of defendant's other employees were also guilty of negligence."

We think this instruction was covered by the other instructions given in the case, particularly by instructions Nos. 3 and 6 given at the request of the appellant. A comparison of the instructions will show that the same matters embodied in this instruction are substantially embraced in the instructions given. A refusal to give an instruction that is substantially covered by another instruction given is not prejudicial. *Fox* v. *Spears,* 78 Ark. 71; *Burrow* v. *Hot Springs,* 85 Ark. 396.

In the case of *Sadler* v. *Sadler,* 16 Ark. 628, ENGLISH, C. J., speaking for the court, said: · "A multiplication of instructions, announcing in effect the same legal principle, tends only to incumber the record, perhaps to confuse the jury, and is not to be encouraged." To the same effect, see *Haney* v. *Caldwell,* 43 Ark. 184. This applies with striking appropriateness to cases like the present one where, although the testimony is voluminous, the issues to be submitted to the jury are not complicated, and 38 instructions were requested by the appellant. We may add in this connection that instructions Nos. 4, 18, 19 and 20 are substantially the same as other instructions given by this court, consequently no prejudice resulted to appellant from the refusal of the court to give them.

7. The counsel for appellant assigns as error the refusal of the court to give instruction No. 23 asked by them. It reads as follows:

"23. If you find from the evidence that, after plaintiff had passed the switch with his engine and had brought it to a stop, before getting to the ground to fix the fire, he looked back and saw that the cars had not passed the switch, and if he had known that the switch was still turned for the track he was on, he would not have gotten on the track behind his engine where he was hurt, and that the switch and tracks were in his plain view, and he could have seen that the switch was not turned if he had looked at it or at the tracks at that point, but he failed to look at the switch or track at that point, and thereby did not exercise the reasonable care of an ordinary prudent person under the circumstances, your verdict will be for the defendant."

We think this instruction is open to the objection that the effect of it was to take the question of contributory negligence from the jury. The word "thereby" refers to "but he failed to look at the switch or track at that point," and thus makes appellee's failure to look contributory negligence as a matter of law. In any event, the language used is doubtful or ambiguous, and it is not prejudicial for a trial judge to refuse an instruction which in his opinion has a tendency by its terms to take from the consideration of the jury a disputed question of fact, and thus mislead them as to the issues submitted to them for their decision.

8. Counsel for appellant assigns as error the action of the court in giving instruction No. 3 at the request of the appellee. There was error in giving this instruction. In the case of *Little Rock, M. R. & T. Ry. Co.* v. *Leverett,* 48 Ark. 333, the court said: " Contributory negligence is a matter of defense. It is not presumed, but must be proved, and the burden of proving it rests on the defendant. This court has ever since adhered to that rule. *Jones* v. *Malvern Lumber Co.,* 58 Ark. 125.

In the case of *Hot Springs Street Railroad Co.* v. *Hildreth,* 72 Ark. 572, the court said: "The burden of proving negligence is on the plaintiff, and of proving contributory negligence is on the defendant, unless it is shown by the testimony of the plaintiff."

The act of March 8, 1907, commonly known as the fellow servants act, makes the master liable for the negligence of all his servants, but it does not take away his defense of contributory

negligence, and the rule in regard to the burden of proof is not changed by the terms of the act. Hence we can see no reason for a change of the rule, and adhere to our former rulings in that respect.

9. We now come to the question, was the verdict excessive? This question has given us much concern. It is an extremely difficult and a somewhat delicate matter, in cases like this, to tell when the verdict is, or is not, excessive. It has been frequently said that it is difficult to find a measure of damages for pain, for the obvious reason that none would be an acceptable inducement to suffer it; but when it has occurred the compensation as such must be considered upon a reasonable basis of estimate. Under our system of jurisprudence, the amount of damages must be left largely to the reasonable discretion of the jury. Again, we may say, it has been repeatedly held that they may not give any amount they please. The appellee in this case was 22 years old at the time of the accident. He had been to school but little, but his testimony shows him to be a man of fair average intelligence. His left leg was injured, and had to be amputated about 5½ inches below the hip. He suffered great pain, and lay in the hospital for one month after his leg was amputated. On his return home, he fell and hurt it again, so that he had to be carried back to the hospital and remained there for six weeks longer. His medical bill and hospital fees were $386.22. He commenced working for the appellant in August, 1906, and worked for it until the time of the accident. He commenced to run the engine on the 22d of January, 1907, and was earning $2.40 per day when he was hurt. Prior to his employment by appellant, he had worked for 15 nights in the railroad yards at Hot Springs running a switch engine. This was all the experience he had in running an engine for pay, prior to his employment by appellant. He said he had learned how to run an engine by riding on railroad locomotives with engineers who were his friends and who would teach him.

Dr. Gann, the surgeon who amputated his leg, said that nearly all stumps give a man more or less pain sometime during his life, but not necessarily in every case.

It will be seen that appellee had not followed the occupation of running an engine on a regular line of railroad, and it is a mat-

ter of common knowledge that he would have had to serve as a fireman before he could obtain such position. His means of earning a living in many other occupations is still open to him, and the amount he will recover in this case, properly invested, will yield an income that will materially assist him in providing for his future support. Everything considered, we think the verdict was excessive, and that the amount recovered should be reduced to $12,000.

If appellee will, within 15 days, remit the amount of damages down to $12,000, the judgment will stand affirmed; otherwise the judgment will be reversed, and the cause remanded for a new trial.

Mr. Justice BATTLE dissents from the construction we have placed upon instruction No. 1 given by the court at the request of appellee and upon instruction No. 23 asked by appellant and refused by the court.

Mr. Justice WOOD dissents upon the whole case.