SEAMAN-DUNNING CORPORATION *v.* HARALSON.

Opinion delivered July 7, 1930.

94

*Wynne & Miller* and *Rowell & Alexander*, for appellant.

*Sam M. Levine,* for appellee.

MEHAFFY, J. This action was begun by the appellee against the appellant, a corporation, to recover damages for an injury alleged to have been received because of the negligence of the appellant. Appellee was in the employ of the appellant, and at the time of the injury was assisting in feeding a shaper machine, at which automobile sills were being manufactured. The machine consisted principally of a table with a metal surface about three feet above the floor and was about five feet long and three or four feet wide. Adjusted to and set in said table were two spindles or verticle axes. That in said spindles or vertical axes were attached knives which revolved at a high rate of speed; the knives were set in metal collars against which the wood to be cut was pushed; the spindles were about four feet apart, and on a line of about two feet from the south edge of the table. The board out of which the sill was to be made was placed upon and clamped to another heavy board designated the pattern, and said board was shaped to conform to the pattern; the pattern used at the time of the accident was a very heavy board about two inches thick and six or seven feet long and of a width varying from two inches

to one foot; there were four handles affixed on the edge of the pattern, two on one end being grasped by the appellee and two at the other end held by a fellow workman. No guards were in front of the handles to protect the hands of appellee or to keep them from coming in contact with the revolving knives. It was the practice of those operating the machine to alternate in pulling said pattern and unshaped board attached thereto across the revolving knives. About three o'clock P. M. while plaintiff was engaged in the ordinary and regular duty assigned to him, he was thrown against the revolving knives which permanently injured his hand. Appellee alleged that he was in the exercise of care at the time, and that the injury was due solely to the negligence of the appellant, its agents and employees, in failing to provide adequate guards and owing to the negligence and carelessness of the fellow employee in suddenly jerking the pattern, the handles of which were properly grasped by appellee, throwing appellee against the revolving knives; he alleged that he suffered great pain and anguish and would continue to suffer; that his hand was permanently injured. Prior to the injury, appellee was an able-bodied man, earning good wages and in line for advancement; his earning capacity is permanently impaired. The appellant filed answer, denying each allegation of negligence, pleading assumed risk, negligence of appellee and unavoidable accident.

The appellee testified that the machine was made something like a table, the top covered with some kind of metal, and on the day he received his injury, he and the operator were running sills, appellee being at the small end of the pattern and the fellow servant at the large end. He testified that the fellow servant snatched awfully fast, and that appellee had just told him ten minutes before that he was too fast for him. Appellee had never run the particular machine and had never run sills. The fellow workman had carried him over there, and he had been at work about an hour. That the other workman would

give a quick snatch and snatch both off appellee's hands into the knives. There were four handles on the pattern, all on the back edge. In running these things you are required to hold your hand a certain way. There is no possible way to hold the handles unless you grip them; the fellow servant, when he pulled, had been snatching. Appellee had been working for the company about a year; worked on different things, on different machines, but had not worked on a machine like this one. Appellee worked with Mr. Truhett about one hour before he was injured; he received his orders from Mr. Truhett; Truhett did not tell him how to operate the machine. There was nothing wrong with the pattern, only there was no guard there, no protection. When Truhett snatched it, he snatched it out of appellee's hand; when it hit his hand, it knocked him back. There was a guard on one handle, but not the handles that appellee was using. The physician testified about the injury and the extent of it, and said that his right hand was about ten per cent. useful. He doubted if any treatment which could be given would relieve the stiff condition of his fingers.

Frank McWilly testified that he was in the employ of appellant and was cleaning up near the machine where Haralson was employed; was present when Haralson was injured and was looking at the man handling that machine, was attracted by the manner in which he was performing his work; he was just like a shot out of a Winchester gun, jumping up this way fast as he could, and Lisbon's hand got into the machine and was injured. There was not any guard on the machine in front of the right handle. It seemed to him that Haralson had a firm grip. This witness never worked at a machine like the one at which Haralson was at work.

Truhett, who was working with Haralson, operating the shaper, testified that Haralson took orders from him; that he supposed Haralson's hand slipped off; that he had cautioned him before that; had told him if he was

not careful his hand would slip off and go into the knives, and that this was what happened; he testified that he did not snatch it or jerk it, and he also testified that Haralson did not tell him he was working too fast. He was running the machine slow. He said you could not make the sills correct by jerking and snatching it. He testified that the guard at the end is to keep chips and splinters from hurting your hand; that if there had been a guard it would not have kept appellee's hands from going into the knives; that there was no necessity for the guard; that he was not jumping and going from side to side, and that he could not have cut the pieces correctly in any such manner. If he had jerked it, it would not have been cut smooth. The reason the guard is placed there is to prevent shavings coming on the handle; had known Haralson ever since he had been at work there; had never worked on a shaper machine, but they had been working on the box shaper once, but that had been quite a while ago. The knives cannot cut beyond the pattern. The cuff holds it away from the knife. That he was not working fast and was watching Libson to see that he held it up there right. He testified that Haralson was experienced on shapers; that, when they pulled it to one another, quite a bit of the pattern extended over the table, and you had to hold it up. Haralson was called a helper. The table was in good shape with a steel top.

Other employees of the appellant testified, in substance, that a guard was unnecessary, and corroborated Truhett as to the manner in which the work had been done in order to cut the sills properly; that if it was jerked through fast, it failed to cut clean. There was no guard on the end, the other end does not have it because it is not considered necessary. On the other patterns, some have a guard on the outside handle and some don't. They do not put guards on to protect the hands of workmen; it would not involve a great expense to put on a guard; the effect of the guard would depend upon what kind of guard was up there. The machine was

proper and safe. Other witnesses testified to substantially the same facts as Truhett.

The evidence as to the negligence of the fellow servant is conflicting. All agree, however, that there was no guard to protect the hands of the operator.

The appellant first contends that the court should have given a peremptory instruction requested by it. It is contended that the appellee assumed the risk; that under the evidence fair minds could not arrive at different conclusions. In other words, he contends that the appellee should be held to have assumed the risk as a matter of law. In making this contention and argument, however, the appellant does not take into consideration the evidence of the negligence of the fellow servant. The evidence on behalf of the appellee showed that the fellow servant was negligent in jerking and snatching the machine, and that this negligence caused the injury. The servant while he assumes the ordinary and usual risks and hazards of his employment does not assume the risk of the negligence of the company for which he is working nor the risk of the negligence of any of his fellow servants. *Aluminum Co. of N. A.* v. *Ramsey,* 89 Ark. 522, 117 S. W. 568; *Southwest Power Co.* v. *Price,* 180 Ark. 567, 22 S. W. (2d) 373; *C. R. I. & P. Ry. Co.* v. *Allison,* 171 Ark. 983, 287 S. W. (2d) 197; *C. R. I. & P. Ry. Co.* v. *Daniel,* 169 Ark. 23, 273 S. W. 15; *E. L. Bruce Co.* v. *Yax,* 135 Ark. 580, 199 S. W. 535; *St. L. S. W. Ry. Co.* v. *Garrett,* 179 Ark. 690, 18 S. W. (2d) 321; *Newark Gravel Co.* v. *Barber,* 179 Ark. 799, 18 S. W. (2d) 331.

The court did not err in refusing to direct a verdict for appellant. The question of assumed risk in this case would have been a question for the jury if there had been no evidence of the negligence of a fellow servant. From the evidence in this case it cannot be said that the danger was so obvious and open that a prudent person would not have continued the work. The evidence in the record does not show very clearly the kind of machine being used nor the location of the knives. It is evident from the record

that the machine was exhibited to the jury and witnesses demonstrated the manner of operation. The machine was about four and a half or five feet long, about three and a half feet high and had a blazer on it. Spindles come up each side. These spindles have knives on them, and cut what you run on it. The machine is made something like a table. There was a guard on one handle, but no guard on the handle which appellee was using. One of appellant's witnesses testified that the knife could not cut beyond the pattern. The cuff holds it away from the knife. There is evidence about the practical use of a guard and as to whether a guard was necessary, but practically no evidence as to whether the danger was obvious or apparent. It therefore appears that the question of assumed risk was a question for the jury. While the rule is firmly established that a servant assumes the ordinary risks and hazards incident to his employment, it is said: "Although the defense of assumption of risk is established as a part of the law and will be applied in all cases fairly within the rule, it is nevertheless, not a favored doctrine, but at best is artificial and harsh and should not be extended beyond its reasonable limits." 39 C. J. p. 689.

In cases where intelligent, reasonable and fair-minded men would differ as to whether the danger was obvious or whether it was one of the ordinary risks incident to the employment, the question must be left to the jury. "Whether the servant knew and appreciated the danger or, in the exercise of ordinary care, ought to have known of it so as to be chargeable with the assumption of the risk thereof, is a question for the jury, unless the evidence warrants but a single reasonable inference to such fact. Thus on conflicting evidence it is for the jury to determine whether the danger was obvious or latent, and whether the servant had sufficient opportunity to discover it." 39 C. J., p. 1188, § 1365.

Appellant next contends that the court erred in refusing to give its instruction No. 2, which follows: "No.

2. The court instructs the jury that it was as much the duty of the plaintiff, Haralson, to have avoided an injury to himself as it was the duty of Truhett to have prevented an injury. If, after a consideration of the testimony, you find that the injury sustained by the plaintiff was the result of his failure to exercise ordinary care in avoiding the injury, then your verdict will be for the defendant.'' This instruction was properly refused because it told the jury in effect that plaintiff could not recover if he was guilty of contributory negligence. This is not the law. Contributory negligence is not a bar to recovery.* The court gave a correct instruction on contributory negligence.

It is next contended that Truhett should have been permitted to testify that, if there had been a guard there, it would not have kept appellee's hand from going into the knives. This was not only a mere opinion, but the machine itself was in the presence of the jury, and they could see whether a guard would have been a protection. The witness gave no reason why it would not have protected him. This witness and others were permitted to show the machine and knives and demonstrate how it was used.

There was no error in the court refusing to permit witness LaClear to testify about what the record showed as to how fast other employees worked. The witness did not make the record, and there was no evidence that it was correctly kept. He was undertaking to testify as to what the record showed from a memorandum. Appellee did not object to the record, but asked that he be required to produce the record, and the appellant did not offer to do this.

As sustaining its contention that Truhett should have been permitted to state his opinion about the guard, the appellant cites and relies on *Railway Company* v. *Barron,* 166 Ark. 641, 267 S. W. 582. In that case the court held that the statement of the witness was proper

* See Crawford & Moses' Dig., § 7145 (Rep.).

because he stated at the time the facts upon which he based his opinion. The other case relied on is *Pine Bluff Compress & Warehouse Co.* v. *Andrews,* 180 Ark. 106, 20 S. W. (2d) 633. In that case the witness did not give his opinion but stated facts.

The evidence was in conflict as to whether the fellow servant was guilty of negligence that caused the injury, and this was a question for the jury. We find no error, and the judgment of the circuit court is therefore affirmed.