CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.*
ALLISON.

Opinion delivered October 18, 1926.

1. MASTER AND SERVANT—ASSUMED RISKS.—A servant assumes the risks ordinarily incident to his employment.

2. MASTER AND SERVANT—ASSUMED RISKS.—Negligence on the part of a master or fellow-servant is not an incident of a servant's employment, and the servant does not assume the risks therefrom unless they are obvious and patent.

3. MASTER AND SERVANT—ASSUMED RISKS.—At common law, a servant assumes the extraordinary risks incident to his employment or risks caused by the master's negligence, provided they are obvious or fully known and appreciated by him.

4. MASTER AND SERVANT—ASSUMED RISKS.—While in the case of ordinary risks a servant is conclusively presumed to know them, he is not charged with constructive knowledge of the negligence of the master or of a fellow-servant.

5. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.—A carpenter working on the roof of a caboose, who was injured when he stepped on a loose piece of tin left by a fellow-servant whose duty it was to remove such loose pieces, *held* not negligent as matter of law.

Appeal from Lonoke Circuit Court; *George W. Clark,* Judge; affirmed.

*Thos. S. Buzbee, George B. Pugh* and *H. T. Harrison,* for appellant.

*Harry H. Myers* and *Reed & Beard,* for appellee.

HART, J. Appellant prosecutes this appeal to reverse a judgment against it in favor of appellee for damages for injuries sustained by him, which, he alleges, was caused by the negligence of a fellow-workman while they were engaged in repairing the roof of a caboose for appellant. This is the second appeal in the case. The judgment upon the first appeal was reversed on account of error of the trial court in instructing the jury. *Allison* v. *C. R. I. & P. Ry. Co.,* 164 Ark. 333, 261 S. W. 629.

The sole ground relied upon for a reversal of the present judgment is that the evidence is not legally sufficient to support it. Counsel for appellant insists that, when the evidence is viewed in the light most favorable to the appellee, he should be held, as a matter of law, to be precluded from recovery under the doctrine of assumed risk. The doctrine of assumed risk is predicated upon the knowledge of the employee of the risks to be encountered and his consent to be subject thereto. Hence the general rule is that the servant assumes the risks ordinarily incident to his employment. Negligence, on the part of the master or of a fellow-servant, is not an incident of the employment; and the servant does not assume the risks therefrom, unless they are obvious and patent. *C. R. I. & P. Ry. Co.* v. *Daniel,* 169 Ark. 23, 273, S. W. 15.

At common law, the rule is well settled that a servant assumes the extraordinary risks incident to his employment, or risks caused by the master's negligence, which are obvious or fully known and appreciated by him. *Boldt* v. *Pennsylvania Railroad Co.,* 245 U. S. 441.

The result of these views is that, in the case of ordinary risks, the servant is conclusively presumed to know them, while, in the case of risks caused by the master's negligence or the negligence of a fellow-servant,

he is not charged with constructive knowledge, unless they are so obvious that an ordinarily prudent person would have observed and appreciated the risks.

In the case before us, according to the evidence for appellee, at the time the accident in question happened he had been working for several years as a carpenter, and had worked for another railroad company in the same capacity for several years prior to his employment by appellant.

On the day he was injured, he and H. C. Voss, another carpenter, were on the top of the caboose, tearing the siding off of the cupola. Their object in tearing the siding off was in order that S. W. Dale, a metal worker, could pry the tin off and replace it with new tin. The old tin or flashing had become rusty, and this caused the roof to leak. In placing the tin on the roof, it was caught and flashed up against the cupola. The strips of wood were then nailed on the cupola. Thus, it was necessary to remove the siding before the tin flashing could be taken off. The strips of flashing are about 7½ inches wide and about 4 feet long.

Dale and appellee were working on the north side of the cupola, and Voss was working on the south side of it. The cupola is about 30 inches high and the caboose is about 9 feet wide. There was room enough to walk on the top of the caboose on each side of the cupola. Appellee started to work at the northeast end of the cupola, and Dale was working behind him, cutting the tin.

It was the duty of appellee, when he pried off the siding, to carry it along in front of him until he could reach a place where he could dump it off of the car. It was also the duty of Dale to take up the tin as fast as he cut or pried it off. In other words, each workman was supposed to clean up his work as he went along.

After appellee had pulled all the siding off of one side, he was notified to go over on the other side so as to be out of the way of Dale. Appellee stood up next to the cupola, about the middle of the car. Voss asked

him about the flashing on the south end of the caboose where he was working. Voss said that the flashing on the south end of the caboose was rusted and warped. Appellee crawled or walked on towards the end of the car, and then started to walk around the side of the cupola next to the edge of the car. In doing so, he stepped upon a piece of tin or flashing which had been pried up. This caused him to slip, and to fall off the car, carrying the piece of flashing or tin with him. He had looked down, as he stepped around the edge of the cupola, and observed the piece of tin or flashing. He did not observe that it had been pried loose from the roof of the car, when he stepped on it. In other words, he did not know that the flashing had been pried up and that it was loose when he stepped on it.

Under these circumstances, we do not think it can be said, as a matter of law, that an ordinarily prudent man or one with the experience of appellee ought to have noticed that the piece of flashing was loose. He was not required to make an inspection to see whether Dale had left any of the flashing where he would walk on it.

It was the duty of each servant to clean up his work as he went along. Appellee was working in front of Dale. When he tore off strips from the caboose, it was his duty to carry the strips along in front of him until he reached a place near the edge of the roof of the car where he could throw them on the ground. It was likewise the duty of Dale to remove the tin as he pried it up. He might anticipate that Voss or appellee would have occasion to walk on the place where he had pried up the tin, in order to perform their work. It is fully inferable from the testimony that it was the duty of Dale to throw the tin or flashing off of the roof of the car when it was found to be so defective that it could not be used again, or any part of it used for repair work.

The testimony shows that sometimes new tin would be carried on the roof by Dale to be used in repair work, and sometimes he could use a part of the old tin for that purpose. In any event, he knew that his fellow-workman

might have occasion to walk around the cupola in doing their work. Hence it is fairly inferable that, when he pried up the strips of tin or flashing, he should have either thrown them off of the roof or have carried them to one side, so that his fellow-workman would not slip on them in walking around the cupola. Thus it will be seen that the condition which caused the injury was created by the negligence of a fellow-servant of appellee.

Appellee was not required to make an inspection to see whether or not a strip of tin had been pried up before he stepped on it. He had a right to assume that Dale had discharged his duty in the premises. Appellee said that he looked down on the roof before he stepped around the corner of the cupola, and did not notice that the strip of tin or flashing had been pried up. The jury might have found his testimony on this point to be true. It might have believed that Dale left the tin laying flat down on the roof in the same position that it was before he pried it off, and that appellee, relying upon the fact that Dale would move the tin out of his way when he pried it up, did not notice that he had not done so when he looked at it.

The result of our views is that the court did not err in refusing to declare as a matter of law that appellee had assumed the risk. The judgment will therefore be affirmed.