SOUTHWEST POWER COMPANY *v.* PRICE.

Opinion delivered December 2, 1929.

Evans & Evans, James B. McDonough and Frank L. Wolf, for appellants.

Fuller, Porter & Fuller, Warner & Warner and G. C. Hardin, for appellee.

McHaney, J. Appellee is the widow and administratrix of the estate of Henry Clay Price, deceased. She brought this action in her representative capacity to recover damages from appellants for the death of her husband, for the benefit of herself and minor child. The Southwest Power Company and O. B. Hanks will hereafter be referred to as the power company and Hanks.

Henry Clay Price was a lineman in the employ of the power company. In January, 1928, he was engaged with Hanks and other employees of the power company in rebuilding or repairing its high-powered transmission lines extending along the highway between Mansfield and

Booneville. On January 26, 1928, while engaged in putting in a new pole in the place of an old one, and while removing the three wires, carrying 33,000 volts of electricity, from the insulators on the old pole, so that it could be removed, and the wires attached to insulators on the cross-arm of the new pole, he was electrocuted in the following manner: Price climbed up the old pole, and Hanks had climbed the new pole. They had detached the outside wires from the old cross-arm, attached jew-claws to them, and caused them to be pulled out of the way by ropes attached to the lower ends of the jew-claws, and fastened to some object on the ground, and were engaged in removing the middle or third wire from the old pole and elevating it so as to get it in the clear. This was done by Hanks passing a jew-claw up the new pole through a rope loop held open by Price, hooking the jew-claw on to the wire, pushing the wire up, then tying the rope in that jew-claw around the pole so as to hold it in the clear of the poles and the work to be done on them. This particular jew-claw is an instrument nine feet long, with a hook at one end, with a wooden handle attached to the hook, and with a threaded bolt that closes the hook by turning the wooden handle. The hook or claw is "U" shaped, and when the handle is turned to the right the threaded bolt is forced up into the hook or claw, and, when securely fastened on the wire, prevents the wire from falling out of the hook.

The evidence is in dispute as to whether Hanks or Price placed the jew-claw on the middle wire, and counsel for appellant concede that, since there is a conflict in this regard, the finding of the jury is against it. After the jew-claw had been placed on the wire, Hanks and Price pushed it up in the clear, and Price was in the act of tying the rope in the bottom end of the jew-claw to the pole to hold it in its then position, and, while holding to one of the braces on the cross-arm, the wire, heavily charged as aforesaid, fell out of the jew-claw and down on to the metal cross-arm, creating a short circuit,

which communicated the whole force of the electric current into the body of appellant, killing him immediately.

The charge of negligence relied upon, and the only one submitted to the jury in this case, was that Hanks, after attaching the jew-claw to the wire, negligently failed to close up the opening in the "U" shaped hook or claw on the jew-claw by turning the handle until the threaded bolt pressed tightly against the wire. The case was tried to a jury, which resulted in a verdict and judgment against both appellants for $30,000.

Many errors of the trial court are assigned and urged for a reversal of this case. The first is that the court erred in denying the petition of the power company for the removal of this case to the United States District Court. The power company, a corporation, is a non-resident of this State, incorporated under the laws of Delaware. Hanks is a citizen and resident of the State of Arkansas, and the appellee is a citizen and resident of the State of Oklahoma. The suit was filed in the circuit court for the Greenwood District of Sebastian County, on August 21, 1928, and service was had on Hanks on August 24, and on the power company on August 29, 1928. The regular terms of the circuit court, as fixed by law, are held in the Greenwood District on the first Mondays of January and July of each year. On July 16, 1928, while the court was in regular session, it entered an adjourning order, adjourning court until September 27, 1928. On that date court was in special session, and, after completing the business before the court, it adjourned until court in course.

The petition and bond for removal were filed by the power company December 28, 1928, three months after the adjourned session of the circuit court in the Greenwood District. Section 29 of the Judicial Code of the United States provides that, where a party entitled to remove a suit from the State court to the District Court of the United States, and desires to do so, "he may make and file a petition, duly verified, in such suit in such State

court, at the time, or any time before the defendant is required by the law of the State or the rules of the State court in which such suit is brought, to answer or plead to the declaration or complaint of the plaintiff, for the removal of such suit into the District Court to be held in the district where such suit is pending.''

The power company was therefore required to file its petition and bond for removal in the State court within the time it was required by the laws of Arkansas to plead, and it makes no difference that a default has not been taken. *K. C. Ft. S. & M. R. R. Co.* v. *Daughtry,* 138 U. S. 298, 11 S. Ct. 306; *Southern Pacific Ry Co.* v. *Stewart,* 245 U. S. 359, 38 S. Ct. 303; *K. C. S. Ry. Co.* v. *McGinty,* 76 Ark. 356, 88 S. W. 1001; *Midland Valley R. R. Co.* v. *Hoffman Coal Co.,* 91 Ark. 180, 120 S. W. 380.

In the Daughtry case, *supra,* the court said: ''The statute is imperative that the application for removal must be made when the answer is due, and, because a plaintiff in error does not take advantage of his right to take judgment by default, it cannot be properly held that he thereby extends the time for removal.''

In the Midland Valley Railroad Company case, *supra,* this court said: ''Assuming that the case was removable, the petition was not filed in time. 'A petition for removal of a cause to a Federal court, which is filed after the time allowed by the statutes of this State for filing of answers to complaints, is too late.' *K. C. S. R. Co.* v. *McGinty,* 76 Ark. 356, 88 S. W. 1001, and cases cited.''

The question then to be determined is, when was the power company required by the statutes of Arkansas to plead? Section 1139, C. & M. Digest, provides: ''In all civil actions the time fixed in the summons for the defendant to answer shall be within twenty days after service, when the summons is directed within the State, and thirty days when it is directed outside the State.''

Section 1208, C. & M. Digest, provides: ''The defense to any complaint or cross-complaint must be filed

before noon of the first day the court meets in regular or adjourned session after service. First. Where the summons has been served twenty days in any county in the State * * *.''

In *Tuggle* v. *Holman Real Estate Co.*, 126 Ark. 25, 189 S. W. 169, this court said, speaking of the above sections of the statute: ''The effect of these amendments is to require the defense to any complaint or cross-complaint to be filed before noon of the first day the court meets in regular or adjourned session, where the summons has been served twenty days in any county in this State; and judgment by default may be rendered on any day of any regular or adjourned session when the defense has not been filed on or before noon of the first day of court twenty days after the service of summons.''

The statute is clear. There is no room for construction. The language of the court in the above case is merely a repetition of the provisions of the statute. The power company contends that, because it is alleged in the petition for removal that the time had not expired in which to plead, answer or demur to the complaint, the circuit court had to pass on a question of fact to determine the question of whether the petition was filed in time, and that the circuit court could not determine such question of fact. We do not think this allegation in the petition for removal created any issue of fact, but was purely a conclusion of law. The circuit court, in determining, which it did, that the petition and bond were not filed in time, did not determine any issue of fact, but a question of law only was presented and determined by the court. The trial court was required to take judicial knowledge of its terms, both regular and adjourned, the dates when it was in session, and of its own records, regardless of the allegations in the petition for removal. *Riley* v. *First Trust Co.*, 65 Ind. App. 577, 117 N. E. 675. Therefore the court was required to take judicial notice of the fact that it was in session on September 27, 1928. It required no proof. The court knew that it

was in session on that date, and, under the statutes above mentioned, the power company was required to plead on or before noon of that date, and the fact that no judgment by default was taken against it cannot be held to extend the time to file the petition and bond for removal. *K. C. & Ft. S. & M. Ry. Co.* v. *Daughtry, supra.*

It can make no difference, so far as the power company is concerned, that the court was in session only one day, or the character of business transacted, if any, or that it had no actual knowledge that it would meet in adjourned session on said date. It is sufficient that the court was in adjourned session on that day, and the petition and bond for removal were not filed by noon of that day. More than twenty days had expired after service on September 27, and we therefore hold that the petition and bond were filed out of time, and that the circuit court correctly so held.

This view of the matter makes it unnecessary to discuss the other ground alleged in the petition for removal, that is, that Hanks was fraudulently joined as a party defendant with the power company for the purpose of preventing a removal. But we may say, in passing, that, even though the petition and bond for removal had been filed in time, the petition was insufficient to present a removable case on the ground of fraudulent joinder.

A second ground urged for a reversal, discussed under many headings, is that the verdict is not supported by substantial evidence. We cannot agree with appellants in this regard. As heretofore stated, the only allegation of negligence submitted to the jury was the failure of appellant Hanks to securely fasten the jew-claw on the wire at the time he placed it thereon. Paul Price, foreman in charge of this work, and a brother of appellee's intestate, testified that he saw Hanks place the jew-claw on the middle wire and tighten it. The witness could see, from his position on the ground, that the jew-claw was placed on the wire by Hanks, and that he tightened it by turning the handle, but just how much he tightened it

he could not tell. And counsel for appellant urge that, since Paul Price testified that he saw Hanks tighten the jew-claw, this concludes appellee on any question of negligence, as the only question of negligence relied upon was his failure to tighten, and, having testified that he did tighten, this had the effect of destroying appellee's allegation of negligence. We do not think so. The word "tighten" expresses a relative idea. By turning the jew-claw one turn to the right it might be said to have been tightened. In other words, what the witness Paul Price meant by saying that he saw Hanks tighten the jew-claw, but he did not know how much, was that he saw him turn the handle of the jew-claw, but he did not know whether it had been securely fastened on the wire. We think this is the way the jury accepted this testimony, and we think the jury were justified in so accepting it.

Without setting out all of the evidence touching on this question, and after a careful reading and examination of the testimony given by all of the witnesses, we are of the opinion that there was sufficient testimony to submit this question to the jury. Appellants concede the rule of this court, that the jury are the judges of the credibility of the witnesses and the weight to be given their testimony, and that this court will not reverse for insufficiency of evidence merely because we may think the preponderance of the evidence is against the finding and judgment, but, if there is any substantial testimony to support the verdict, this court will not disturb it for insufficiency of evidence.

It is next contended by appellants that the deceased was guilty of contributory negligence, and that he assumed the risk. This court has many times held, so often that it is settled beyond all controversy, that an employee assumes the risks and hazards usually incident to the employment in which he is engaged, but that he does not assume the risk of the negligence of the master, nor that of a fellow-servant, unless they are obvious and patent. *C. R. I. & P. Ry. Co.* v. *Allison,* 171 Ark. 983, 287

S. W. 197. He has the right to assume that the employer will perform his duty and that each of his fellow-servants will perform his duty, and, if he is injured or killed while in the exercise of ordinary care for his own safety, either by the negligence of the master or any of his fellow-servants, he has a right to recover. *Western Coal & Mining Co.* v. *Burns*, 168 Ark. 976, 272 S. W. 357. Moreover, at the request of appellants the court instructed the jury fully on the question of assumed risk, in instructions 12 and 16. There is no evidence that the deceased was guilty of contributory negligence.

Numerous other errors are argued, including the alleged errors of the court in giving and refusing instructions, and improper remarks of counsel. To take them up and discuss them in detail would unduly extend this opinion. Suffice it to say that we have examined carefully all the assignments of error made, and find them without merit. The improper remarks of counsel charged arise in connection with the alleged excessiveness of the verdict and judgment. No objection was made at the time to the remarks of counsel in his closing argument, but they were presented to the trial court for the first time in the motion for a new trial. We do not think these remarks, which were made in the heat of argument, were so improper in themselves as to call for the interference of the trial court, when counsel for appellants did not think them of sufficient importance at the time they were made to object to them, or ask the court to exclude them. If counsel had deemed them prejudicial or improper, they should have objected at the time. Having failed to do so, they must be held to have waived any prejudicial effect they might have had.

It is said that the verdict is excessive; and, while it is a very substantial sum, a question that has given us some concern, we have reached the conclusion that we cannot say as a matter of law that it is excessive. Deceased was a young man about 23 years of age, making $165 per month. He had a wife and one small child.

The proof showed that he was contributing to their support from his wages $115 per month, and that he had an expectancy of 40 years. It is a simple matter in arithmetic to determine that the present value of an annuity of $1,380 a year for a period of 40 years would be a sum in excess of $27,000, depending upon the rate of interest. And in addition to the pecuniary loss sustained by the widow and child, the child is entitled to a reasonable sum for the loss of parental love, care and training. The verdict was for a gross sum, and we cannot tell how much was awarded for pecuniary loss and how much for parental care, but it certainly could not be said that a judgment of from $3,000 to $5,000 for this purpose would be excessive. *Mo. Pac. R. R. Co.* v. *Bushey, ante* p. 19. Nor do we think there is anything in the record to show that the verdict was the result of passion and prejudice, as argued by appellants.

The court fully and, as we view it, fairly instructed the jury, and since, as we have found, no error was committed, the judgment must be affirmed. It is so ordered.