Coca-Cola Bottling Company of Arkansas *v.* McNeece.

4-4044

Opinion delivered November 11, 1935.

*S. Hubert Mayes* and *J. Paul Ward,* for appellant.
*W. P. Smith* and *Hugh Williamson,* for appellee.

MEHAFFY, J.   The appellee began this action in the Jackson Circuit Court to recover damages alleged to have been caused by drinking Coca-Cola that had a fly and other foreign substance in it.  She drank a little of it, and it made her sick.

The appellant filed its answer denying all the material allegations in the complaint, and alleged that appellee was guilty of contributory negligence.

The jury returned a verdict for $200, and this appeal is prosecuted to reverse that judgment.

The following stipulation was introduced in evidence:

"The defendant admits that the Coca-Cola sold by the retail dealer from whom the plaintiff purchased the bottle in question is Coca-Cola from the Coca-Cola Bottling Company of Arkansas at Batesville, Arkansas, and that such Coca-Cola is manufactured at the plant in Batesville.  This defendant, however, specifically denies that the bottle purchased by the plaintiff contained any foreign substance at the time it left the plant or place of business of defendant at Batesville or at the time it was delivered to the retailer.

"It is further stipulated and agreed by the parties hereto that that portion of the complaint reading:   'And she has been caused to have a permanent injury, soreness of the stomach and great nervousness' is eliminated from the complaint and stricken out.

"It is further stipulated that the deposition of Dr. M. S. Craig which has heretofore been taken and reduced to writing may be read in evidence by either party in this cause."

The appellee testified that she lived at Walnut Ridge and was engaged in business with her husband; that on July 26, 1934, she was at Batesville with a crowd of Walnut Ridge people in the grandstand at the baseball game; one of the parties from Walnut Ridge purchased six bot-

tles of Coca-Cola; the boy who was selling them stood in the aisle, pulled the caps off of the bottles, and handed the bottles to the parties; appellee started drinking and saw something in the bottle. She testified that she was excited about the ball game and did not pay much attention, but drank another swallow or two; she then felt something in her mouth, put her handkerchief up to her mouth, spit out the Coca-Cola, and spit out a fly in her handkerchief. She could not tell about the other substance in the bottle, but it looked like fly legs or wings or something that had come to pieces in the bottle. There was another fly in the bottle that she could see. She sat there a few minutes and began to get sick, her body was cramping and drawing; she was taken out of the grandstand and laid on the grass, and then taken to Dr. Craig's hospital. He gave her a hypodermic to cause her to vomit and then gave her another after a few minutes, and a large glass of salt water. She was cramping about her body. After the hypodermics and the glass of warm salt water, her stomach began to relax and she began to vomit. She stayed in the hospital about four hours and was very sick. She was put in the automobile and laid down on the back seat and was carried home, and Dr. Rainwater was called, and treated her stomach for about ten or twelve days. She testified that she had recovered, and that she did not claim any permanent injury. She suffered severe physical pain and mental anguish. She is 24 years old. She testified that she could see things in the Coca-Cola, a mesh-like substance like fly's legs, or something that had come to pieces. She suffered severely for about 28 hours, and was under the care of a doctor. When the little boy that sold the Coca-Cola handed out the six bottles, appellee handed them down the row as he handed them to her, and the bottle she got was the last bottle from which he pulled the cap, and she started drinking it at once. There was something decomposed in the Coca-Cola, and it looked like it might have been in there some time.

Several other witnesses testified and corroborated the testimony of appellee.

The testimony offered by the appellant was in conflict with the evidence introduced by appellee.

The only ground relied on by appellant is that the evidence is not legally sufficient to support the verdict. Appellant, in its brief, says: "The appellant in this case seeks a reversal and dismissal of the judgment had against it upon the sole ground that the appellee is not entitled to recover for the reason that there was no legal damages proved for which this appellant would be liable. In other words, that there was no actual physical injury brought about or proximately caused by the alleged occurrence, and hence any damages suffered would be unaccompanied by any physical injury attributable to or proximately caused by the incident complained of."

There is ample evidence to show that the appellee suffered physical pain and injury.

Appellant calls attention to the case of *Peay* v. *Western Union Telegraph Company*, 64 Ark. 538, 44 S. W. 348, and argues that that case holds that a person cannot recover for mental anguish or physical pain unaccompanied by physical injury. That was a suit for damages for failure to deliver a telegram. In that case there was no physical injury, and the court said: "While there is considerable conflict in the adjudged cases upon this question, we are of the opinion that the better considered cases are against the right of recovery for mental pain and anguish unaccompanied by physical injury."

In the present case the evidence clearly shows that there was physical injury.

The appellant calls attention to several other cases, but in none of them was there any evidence of physical injury.

"When passing on the sufficiency of the evidence to support the verdict, we must give the evidence which tends to support the verdict the highest probative value." *Missouri Pac. Rd. Co.* v. *Fowler,* 183 Ark. 86, 34 S. W. (2d) 1071; *Fort Smith Traction Co.* v. *Oliver,* 185 Ark. 227, 46 S. W. (2d) 647; *Pekin Wood Products Co.* v. *Mason,* 185 Ark. 166, 46 S. W. (2d) 798; *Ark. Baking Co.* v. *Wyman,* 185 Ark. 310, 47 S. W. (2d) 45. There is a long line of cases holding that the Supreme Court, on ap-

peal, weighs the evidence in the light most favorable to the appellee and indulges all reasonable inferences in favor of the judgment. We deem it unnecessary to cite more authorities on this question.

We have many times held that where there is any substantial evidence to support a verdict of the jury, it is binding on this court, because the jurors are the judges of the credibility of witnesses and the weight of the testimony. *Kansas City Fibre Box Co.* v. *F. Burkart Mfg. Co.,* 184 Ark. 704, 44 S. W. (2d) 325; *Kearnes* v. *Steinkamp,* 184 Ark. 1177, 45 S. W. (2d) 519.

Although we might believe that the verdict was against the preponderance of the evidence, still if there is any substantial evidence to support the verdict of the jury, such verdict will not be set aside by this court on the ground of insufficiency of evidence.

There is ample evidence in this case that the appellee suffered physical pain and injury, and the judgment will therefore be affirmed.