MISSOURI PACIFIC RAILROAD COMPANY, GUY A. THOMPSON, ET AL., *v.* CREEKMORE, ET AL.

4-4538

Opinion delivered March 1, 1937.

*Thomas B. Pryor* and *W. L. Curtis,* for appellants.
*Partain & Agee* and *D. H. Howell,* for appellees.

MEHAFFY, J. The appellees filed separate suits against the trustees of the Missouri Pacific Railroad Company, and George Watson, engineer, and J. O. Lockhart, fireman, to recover damages for the alleged negligence of the appellants, where the highway crosses the railroad track near Charleston, Arkansas. Several acts of negligence were alleged. Lynch Creekmore sued for damage to his truck, and alleged that it was damaged in the sum of $3,000. Pete Shelby and Virgil Reddick filed suit for $10,000 each for personal injury. C. R. Thompson, administrator of the estate of Hubert McNulty, filed suit for $25,000 for the benefit of the estate of McNulty, and $25,000 for the benefit of the next of kin.

The trustees of the railroad company filed petitions and bonds for removal to the federal court. The petition was overruled, and the appellants filed answers, and the cases were consolidated for trial. The trial resulted in a verdict and judgments against the railroad company and George Watson, the engineer, as follows: For Lynch Creekmore, $500; for Pete Shelby, $2,100; for Virgil Reddick, $2,000; for C. R. Thompson, administrator, for benefit of the widow and next of kin, $17,000. The jury found in favor of appellants on the cause of action for the benefit of the estate.

Separate motions for a new trial were filed and overruled, and appeals prosecuted to reverse these judgments.

The appellees alleged that a truck with a trailer attached, the trailer being a 24-foot inclosed furniture van, driven by Pete Shelby, one of the appellees, approached

the crossing on highway 22 near Charleston, traveling in a westerly direction, the crossing being the highway crossing with the track of the railroad company, and that a freight train approached the crossing from the north; said freight train had two locomotives in front of the rest of the train, one locomotive immediately before the other; that the first locomotive was in charge of George Watson, as engineer, and J. O. Lockhart, as fireman. It was alleged that the train approached the highway crossing without ringing the bell, blowing the whistle, or giving any other signal or warning of its approach, and that it was being operated at a careless, negligent and reckless rate of speed, fifty miles an hour; that the engineer and fireman negligently failed to exercise ordinary care to keep and maintain a lookout, and that as a result of their negligence, appellees were damaged as alleged in their separate complaints.

The crossing of the railroad track and the highway is an extremely dangerous one. In approaching the track, from the direction in which said truck was approaching, the view of the train, approaching from the direction in which this one was approaching, is entirely obscured and obstructed, and it is impossible for a person approaching on said highway to determine or know of the approach of a train on said track from the north unless some signal or warning either by ringing the bell or blowing the whistle or otherwise of the approach of said train to said crossing to warn travelers along said highway. Each appellee alleged the same acts of negligence and each appellee described the injuries and damage. McNulty, for whose death C. R. Thompson, administrator, brings suit, was killed and Pete Shelby and Virgil Reddick were injured, and Creekmore's truck was damaged.

The appellants filed separate answers in which they denied all of the material allegations of the complaint, and alleged that the injury and damage were caused wholly as a result of the negligence of appellees. The answers then set out the specific acts of negligence charged against appellees.

A cross-complaint was filed by the railroad company alleging that Creekmore's agent negligently drove the

truck and trailer against the locomotive of appellants and damaged same. There is no dispute about the collision, and no dispute about the crossing being a very dangerous one.

The appellants contend for a reversal, first, because they say the evidence is not sufficient to justify a finding in favor of appellees, and that their requests for a verdict in favor of appellants should have been given by the court. There is some conflict in the evidence as to the speed of the train. The testimony on the part of the appellees shows that the train was traveling at a rate of about 50 miles an hour. The appellants' witnesses testify, however, that it was going about 30 miles an hour. The undisputed evidence shows that after the engine struck the truck it carried Reddick on the pilot a quarter of a mile beyond the crossing before it stopped. The undisputed evidence also shows that nothing was done by the enginemen to stop the train or to reduce its speed. Lockhart, the fireman on the engine, testified that when the engine got to the whistling post he saw the lights of the truck and called the engineer's attention to it. He saw the lights first when they came out of the cut. The engine at that time was about 200 feet from the crossing. He saw the truck coming down the hill and saw it slow down. The fireman, therefore, knew that the truck was approaching the crossing, knew it was a dangerous crossing; the highway and railroad track were both in the cut so that the persons in the truck could not see the train until they got almost on the crossing.

Watson, the engineer, testified, when asked what he did with reference to the crossing, that he whistled and rang the bell. He saw the lights on the bridge, but he said he did not know what it was. He knew it was something. He did nothing, according to his own testimony, to check the speed of the train as they approached the crossing. When asked what he did about stopping the train, he said he did nothing until he felt the impact. Watson was asked if he could see the left-hand side of the track. He answered that he looked out on his side of the cab. He was then asked if he refused to answer the ques-

tion about being able to see on the left-hand side, and he said: "I refuse to answer that."

The evidence is in conflict as to whether the whistle was sounded or the bell rung. Lockhart, the fireman, testified that when he saw the truck coming down the hill he told the engineer, and the engineer undertook to start the bell to ringing, but it stuck and he, Lockhart, finally started it. The engineer and fireman on the second engine and the conductor on the train, as well as the engineer and fireman on the first engine, all testified about giving the alarm, but their testimony was in conflict. One witness testified that he heard the alarm at the time he felt the emergency brake applied. This, of course, means that the brake was not applied until about the time the engine struck the truck.

The evidence on the question of negligence of the train crew is in conflict, and it would serve no useful purpose to set it out in detail. The evidence was ample to submit the question to the jury, and its finding is conclusive here.

As to the railroad company, when it was shown that the injury and damage were done by the operation of a train, this made a *prima facie* case, and the burden was on the railroad company to show that it was not guilty of negligence. It not only failed to discharge this burden, but the fireman testified that he saw the truck approaching the crossing, and nothing was done to avoid the injury, and the engineer refused to answer or state whether he could see out on the side from which the truck was approaching or not.

This court has said: "We will not reverse the judgment because of the insufficiency of the evidence, for, as we view this evidence, it is not physically impossible that appellee was injured as the result of stepping into an unblocked frog, although it is highly improbable that the injury was caused in that manner." *Missouri & N. A. Ry. Co.* v. *Johnson,* 115 Ark. 448, 171 S. W. 478.

The fact that this court would have reached a different conclusion had the judges sat on the jury, or that they are of the opinion that the verdict is against the

preponderance of the evidence, will not warrant the setting aside of a verdict based on conflicting evidence.

"The verdict of a jury cannot properly be disturbed on appeal merely because of its appearing to be against the clear weight of the evidence, or because, if we were to pass upon the matter as seen in the printed record, we might find differently than the jury did. If the verdict has any credible evidence to support it, any which the jury could in reason have believed, leaving all mere conflicting evidence, evidence short of matter of common knowledge, conceded or unquestionably established facts and physical situations, it is proof against attack on appeal, and that must be applied so strictly, on account of the superior advantages of court and jury for weighing the evidence, that the judgment of the latter approved by the former is due to prevail, unless it appears so radically wrong as to have no reasonable probabilities in its favor after giving legitimate effect to the presumption in its favor and the makeweights reasonably presumed to have been rightly afforded below which do not appear, and could not be made to appear, of record." *Barlow* v. *Foster*, 149 Wis. 613, 136 N. W. 822; *Baldwin* v. *Wingfield*, 191 Ark. 129, 85 S. W. (2d) 689; *Mathis* v. *Magers*, 191 Ark. 373, 86 S. W. (2d) 171; *Coca-Cola Bottling Co.* v. *McNeece*, 191 Ark. 609, 87 S. W. (2d) 38; *Manhattan Const. Co.* v. *Atkisson*, 191 Ark. 920, 88 S. W. (2d) 819.

As to the conduct of the appellees, the evidence tends to show that at quite a distance from the crossing the truck was slowed down to approximately ten miles per hour, and the parties in the truck looked and listened and were unable to see any train approaching, and unable to hear the bell or whistle, or any other signal or warning. There was testimony tending to show that the whistle was not sounded and the bell was not rung, and as to whether they or any of them were guilty of contributory negligence, was a question for the jury.

It is the duty of a traveler approaching a railroad crossing to exercise reasonable care, such care as a man of ordinary prudence would exercise under the circumstances; but if appellees were guilty of contributory negligence, this does not bar recovery against the rail-

road company, unless their negligence was equal to or greater than that of the railroad company and the jury was properly instructed on negligence and contributory negligence.

It is next contended by appellant that the verdict is excessive. It is conceded, however, that this contention is without merit as to the Lynch Creekmore case. McNulty was killed, and though he lived a short while, the evidence tended to show that he did not suffer any conscious pain, and therefore the recovery by the administrator, was for the benefit of the widow and next of kin only. McNulty was a young man 23 years of age, had a wife and child. His expectancy was something more than 40 years. The evidence showed that he had steady employment at a time when many persons of his age had no employment at all, and it was reasonably certain that his earning power would increase. The appellee was entitled to recover for the benefit of the widow and next of kin, whatever the evidence showed that he would contribute to his wife and child, and in addition to that, a reasonable sum for the loss of parental love, care and training.

In the case of *Southwest Power Co.* v. *Price,* 180 Ark. 567, 22 S. W. (2d) 373, this court held that $30,000 was not excessive where a young man 23 years old was killed and the young man killed left a wife and one small child. The question of the amount, as well as the question of liability, was a question of fact to be determined by the jury. We have no right to disturb a verdict because we think it is excessive, unless we can say there is no substantial evidence to support the amount awarded.

As to the verdicts in favor of Shelby and Reddick for $2,100 and $2,000 respectively, appellants argue that they are excessive, and that the testimony does not show sufficient injuries to justify these verdicts.

What we have said about the finding of the jury in the McNulty case applies to these cases. They were submitted to the jury on proper instructions and there was

no evidence to show that the verdicts were the result of prejudice or passion, or that they were excessive.

It is next contended by the appellant that the court erred in not removing the case to federal court when appellants filed their petitions and bonds for removal.

The petition in the instant case is substantially the same as the petition filed in the case of *Missouri P. Rd. Co.* v. *Miller,* 184 Ark. 61, 41 S. W. (2d) 971, and this question is controlled by that case.

Appellant next contends that its instruction No. 4, requested in the Creekmore case, should have been given. It concedes, however, that the instruction did not state the rule correctly as applied to the railroad company. The jury was properly instructed with reference to the liability of George Watson, and instruction No. 4 was not requested as to Watson alone, but merely told them that the injury resulting from the collision did not carry any presumption of negligence on the part of the defendants. This was not a correct statement of the law, because as to the railroad company the injury caused by the running of trains does carry the presumption that the company was guilty of negligence.

Instruction No. 2 complained about told the jury, in effect, that the plaintiffs could not recover unless they established by a preponderance of the evidence that the accident was wholly a result of the negligence of defendants. The statute expressly provides that a recovery may be had, although the plaintiff may have been guilty of contributory negligence.

Section 8562 of Crawford & Moses' Digest provides that railroad companies shall be responsible for all damages to persons or property done or caused by the running of trains, and this court has repeatedly decided that when an injury is caused by the operation of a train, a *prima facie* case of negligence has been made out against the company. On the question of keeping a lookout, provided for in § 8568 in Crawford & Moses' Digest, the burden is upon the railroad company to show that it kept a lookout.

Appellant also objected to some of the instructions given at the request of the plaintiff, but we have care-

fully examined all the instructions given and refused, and are of the opinion that the jury was correctly instructed as to the law.

It would serve no useful purpose to set out the instructions and discuss them in detail.

We find no error, and the judgments are affirmed.