KANSAS CITY SOUTHERN RAILWAY COMPANY v. DIGGS.

4-6904                                    167 S. W. 2d 879

Opinion delivered January 25, 1943.

*Joseph R. Brown,* for appellant.

*C. E. Johnson, Cecil E. Johnson, Jr.,* and *Abe Collins,* for appellee.

McHANEY, J. Appellee brought this action against appellant to recover damages for personal injuries sustained by him on August 9, 1941, while in the employ of appellant as a section hand, which injuries, it was alleged, occurred by reason of the negligence of other employees of appellant in the section crew with him.

On said date the section crew consisted of four men and the foreman. They were engaged in replacing a defective rail in appellant's track in Sevier county

with a new rail. The old rail had been removed and the new rail placed in position, and it became necessary to close the opening or shorten the space between the end of said new rail and the adjoining rail, which is called "driving expansion." In doing this the crew used an old rail as a battering ram by sliding it back and forth across the oiled 2-inch metal strip extending across the end of a push car and ramming it against the angle bar bolted to the new rail. About 7:45 a. m. on said date, while preparing to drive expansion in the third new rail placed in the track that morning, expansion having already been driven in two of them, appellee was injured when the old rail used as a battering ram fell from the push car, caught his lower left leg between it and the track rail and crushed it, causing the injuries hereinafter more fully detailed. The push car was on the track near the end of the new rail to be driven. The tracks ran north and south. In order to get the push car in position to drive the new rail properly, it was lifted from the track with the west wheels resting on the ties between the track rails, and the east wheels on the east end of the ties, east of the east track rail. In order to get the north end of the push car slightly further to the east to get a better angle for driving the expansion, appellee went to the northwest corner, Tollett, another employee, went to the northeast corner and foreman Todd at the north end thereof, between appellee and Tollett and east of the old rail on the push car to lift it over further to the east. Sparkman and Perry, the other two members of the crew, undertook to handle the rail. Sparkman straddled the south end of this rail and Perry went to the north end. In order to take the load of the rail off the north end of the push car, so that it could be more easily moved east, Sparkman bore down on the south end of the rail (which extended about 12 feet beyond the south end of the push car and a like distance beyond the north end, said rail being 31 feet long and weighing 878 pounds) and the north end was elevated above the ground some 5 or 6 feet. When the north end of the push car was moved to the east, the rail so held was

allowed to fall off the west side of the car and to injure the appellee.

This action was brought under the Federal Employers' Liability Act, appellee being engaged in interstate commerce at the time. The foregoing facts were alleged and the injuries suffered by appellee were detailed. Numerous acts of negligence were alleged and damages prayed in a large sum. Appellant's answer was a general denial, and pleas of the statute of limitations, assumption of risk and contributory negligence were interposed. Trial resulted in a verdict and judgment for appellee in the sum of $25,000. This appeal followed.

For a reversal of this judgment, appellant first insists that the court erred in giving appellee's requested instruction No. 1 and in refusing to give its requested instructions 1 to 12 inclusive, except No. 11, No. 1 being a request for a directed verdict on the whole case, and the others being several requests for directed verdicts on the particular acts of negligence alleged. Instruction No. 1 for appellee is long and somewhat involved.[1]

---

[1] Plaintiff's requested instruction 1 given by the court was as follows:

"If you find from a preponderance of the evidence, under the instructions of the court, that plaintiff, Jewell J. Diggs, was injured while in the employment of the Kansas City Southern Railway Company, and in the discharge of his regular duties when both were engaged in interstate commerce, and while assisting in preparing to drive expansion in the track of defendant's railroad, and while plaintiff was in the exercise of ordinary care for his own safety, and that defendant, acting through its section foreman, A. C. Todd, negligently (1) used and permitted the use of a defective push car with grease on its surface in doing said work and directed that same be done; (2) used and permitted the use of a push car in doing said work and directed that same be done; (3) failed to have the steel rail removed from the push car before permitting said push car to be removed; (4) assisted in moving said push car with said rail on same and permitted and directed same to be done; (5) permitted and directed Herbert E. Sparkman to bear down on the south end of said rail and keep the north end thereof suspended over plaintiff while he assisted said A. C. Todd and Noble Tollett in moving said push car to the east; (6) assisted in moving said push car under said conditions and permitted and directed same to be done; (7) failed to provide and furnish enough men to do so safely, and that defendant acting through its servants, Perry and Sparkman, negligently failed to hold the rail which they were trying to use in driving expansion, and negligently let same get away from them and fall and said Perry negligently moved said rail to the east while the north end of the push car was being moved to the east by plaintiff, Todd and Tollett, and that such negligence of the defendant, if any, and its foreman Todd, if any, its servants Perry

The instruction is first attacked as a whole, because, as charged, it "was confusing, ambiguous and unintelligible." While it is quite lengthy and, therefore, somewhat involved, we do not agree with appellant that it was either confusing, ambiguous or unintelligible. Seven acts of negligence on the part of foreman Todd were submitted, and certain acts of negligence on the part of Perry and Sparkman were submitted, all in conjunctive form, thereby requiring appellee to prove all acts of negligence in order to recover which was a greater burden than the law requires, for, if appellant were proven negligent in any particular charged and such negligence was the proximate cause of the injury, he not having assumed the risk, he would have been entitled to go to the jury on such charge. But appellant cannot complain of the form of the instruction in this respect, because it was more favorable to it than it was entitled to. Of course all acts of negligence charged and submitted to the jury must be supported by substantial testimony, and if not, reversible error is committed. This is true because, as said in *St. L.-S. F. Ry. Co.* v. *Lane,* 156 Ark. 465, 246 S. W. 494, "Otherwise the jury might have found for plaintiff upon allegations of negligence of which there was no proof." See other cases there cited.

In addition to the general attack upon said instruction, specific attacks are made on it because, it is urged, there is no substantial evidence to support the giving of clauses Nos. 1, 5 and 7. No. 1 submits the charge as to whether foreman Todd was negligent in using and permitting "the use of a defective push car with grease on its surface." It is argued that there was no evidence that the car had "grease on its surface," except on the 2-inch metal strip on either end of the car. This is true and we think the jury could not have misunderstood what was meant, and no doubt if the attention of the court and opposing counsel had been called to this fact, the point would have promptly been conceded. No specific

and Sparkman, if any, was the proximate cause of the injury, if any, sustained by plaintiff, then your verdict will be for the plaintiff, unless you find the plaintiff, Jewell J. Diggs, assumed the risk as defined elsewhere in these instructions."

objection thereto was made. The objection now is too. late and not well taken. The other objection to this clause is that there is no evidence that a defect in the push car caused the rail to fall. We cannot agree. It is undisputed that said car was old, dilapidated and the frame broken near the northeast corner, and that Todd had requested a new one. It would give under weight. We think the jury had the right to consider the condition of the car in determining whether its use under the circumstances was negligence. Clause No. 5 of said instruction relates to the charge of negligence of Todd in permitting and directing Sparkman "to bear down on the south end of said rail and keep the north end thereof suspended over plaintiff while he assisted" Todd and Tollett in moving said car to the east. It is now said the rail was not "suspended over plaintiff," but no specific objection was made to this language. Whether directly over him or not, the fact is the north end was elevated near him and the rail pivoted on the oily edge of the south metal strip of the push car, with the south end of the rail near the ground. The point is not well taken. The other objection to this clause is that there was no proof that Sparkman was negligent in bearing down on the south end of the rail. We cannot agree. We think the jury had the right to find that the whole procedure used in driving expansion was negligence and that each separate act constituting the whole procedure was negligence. The bearing down on the south end of the rail and precariously balancing it on the edge of a two-inch greasy metal strip, which elevated the north end of a 31-foot rail weighing nearly 900 pounds, while appellee and two others attempted to move the push car, all being bent over to lift and move said car to the east, created a situation which justified the jury in finding the act negligent. The same thing is true of clause 7 of said instruction complained of. We do not set it out and comment separately on it. Suffice it to say we have carefully considered it and appellant's argument thereon and cannot agree that it is not supported by substantial evidence. It appears to us, as it no doubt did to the trial court and the jury,

that a simple and safe way was to lift the rail from the push car, place the car in proper position and then put the rail back on it to drive expansion. Instead, the foreman directed it be done the other way which justified the jury in a finding of negligence.

It is next argued that appellee assumed the risk as a matter of law and the court should have so declared. The court submitted this question to the jury under several instructions not here complained of. The doctrine of assumed risk "is predicated on the knowledge of the employee of the risk to be encountered and his consent to be subjected thereto. Negligence on the part of a fellow servant is not an incident of the employment; and the servant does not assume the risks thereof unless they are obvious and patent." *C. R. I. & P. Ry. Co.* v. *Allison*, 171 Ark. 983, 287 S. W. 197. We think it cannot be said as a matter of law that appellee assumed the risk and the court properly submitted it to the jury.

Another argument is that the court erred in permitting the introduction of three photographs of appellee's legs taken just before the trial. The objection is that they were taken from positions to magnify the deformity of his left leg and could serve no purpose except to arouse the jury's sympathy and prejudice. There is no evidence that the pictures were taken from positions to magnify the injury. Moreover, his leg was exhibited to the jury and no prejudice could have resulted from the introduction of the pictures. No error was, therefore, committed.

It is finally insisted that the verdict is excessive, and we agree that it is. In so holding we do not mean to minimize the very severe and painful injury suffered by appellee. The heavy steel rail caught his leg 3 or 4 inches above the ankle and crushed both bones in the lower leg and nearly severed the foot and ankle from the leg. He was taken to a local hospital where an effort was made to set the bones and he remained in bed with his leg in a bed rack and with weights attached, in an effort to hold the bones in proper position for

35 or 40 days, when it was placed in a cast. Later he went home, but continued to see the physicians from time to time. About five months after the accident, the cast was removed, but union had not been obtained. He was sent to a company hospital in Kansas City, where a bone graft was done to his leg. About five months later the cast was again removed and he was given a steel brace which he has since worn and will probably have to continue to wear, unless the leg is amputated. His left limb is an inch and a half shorter than his right and is bowed forward at the injury and the heel is too far back to bear weight. Pieces of bone have worked out. All the physicians who testified agreed that the bones were infected with osteo-myelitis and that the leg should be amputated. One of them said it was hazardous to amputate in view of the infection and might endanger his life. Appellee was 39 years old, was in good health and was earning $75 per month, or $900 per year. He owned and operated a farm, owned cattle, chickens and a truck which he was able to drive. His condition had improved. He is able to get about with his brace and a cane and drive his truck. He is not helpless and his condition is not hopeless. Of course, he suffered a very severe and painful injury. He has been awarded a judgment of $25,000 which, if invested at 6%, would yield an annual income for life of $1,500, or $1,000 at 4%, both of which are in excess of his earnings, and at his death he would leave an estate of $25,000 out of this recovery. We think this amount is excessive and that the evidence does not support a verdict in excess of $17,500. We think it would serve no useful purpose to cite cases where we have reduced similar judgments, as each case must rest upon its own facts.

If appellee will, within fifteen judicial days, enter a remittitur of $7,500, the judgment will be affirmed for $17,500. Otherwise, it will be reversed and the cause remanded for a new trial.